FILED
UDR

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

2017 AUG 10 AM 8:43

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

UNITED STATES OF AMERICA
ex rel. WILLIAM STILLWELL and
PENELOPE STILLWELL

$8:17 cv 1894 |7 AAS$

Relators,

Case No.
**FILED UNDER SEAL**
**PURSUANT TO 31 U.S.C.**
**§ 3730(b)(2)**
**DO NOT PUT IN PRESS**
**BOX OR INTO PACER**
**SYSTEM**

v.

STATE FARM FIRE AND CASUALTY CO.
and MOTORISTS MUTUAL INSURANCE CO.

Defendants

## FALSE CLAIMS ACT COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

1.     Relators William Stillwell and Penelope Stillwell bring this action on behalf of the

United States against State Farm Fire and Casualty Co. and Motorists Mutual Insurance Co. for

treble damages and civil penalties for the Defendants' violations of the False Claims Act, 31 U.S.C.

§ 3729 et seq.

2.     Prior to filing this Complaint, pursuant to 31 U.S.C. § 3730(b)(2) and §

3730(e)(4)(B), Relators have provided to the Attorney General of the United States and to the

United States Attorney for the Middle District of Florida a written disclosure of substantially all

material evidence and information they possess.  Because this disclosure statement includes

attorney-client communications and work product of Relators' attorney prepared in anticipation of

TFA - 45178
#400

$S-1$

litigation, and is submitted to the Attorney General and the United States Attorney in their capacity as potential co-counsel in this litigation, Relators understand this disclosure to be confidential.

3.      Relators are "original sources" under 31 U.S.C. § 3730(e)(4)(B) because their allegations are based on their personal experiences dealing with the Defendants.

## JURISDICTION AND VENUE

4.      This action arises under the False Claims Act, 31 U.S.C. § 3729 et seq.  This Court has jurisdiction over this case pursuant to 31 U.S.C. § 3732(a) and § 3730(b), as well as 28 U.S.C. § 1345 and § 1331.

5.      Venue is proper in this district pursuant to 31 U.S.C. § 3732(a) because some of the acts proscribed by 31 U.S.C. § 3729 et seq. and complained of herein took place in this district, and is also proper pursuant to 28 U.S.C. § 1391(b) and (c) because at all relevant times Defendants transacted business in this district. In particular, the false claims listed in **Composite Exhibit 2**[1] were submitted to the Medicare program by providers in the Middle District of Florida. In addition, the fraudulent release agreements attached as **Exhibits 3 and 4**[2] were forwarded to the Relators in the Middle District of Florida.

## PARTIES

6.      State Farm Fire and Casualty Company ("State Farm") provides property insurance to State Farm customers throughout the United States.  It is based in Bloomington, Illinois.  State Farm insured Eagle-Kirkpatrick Management Co., Inc.; Kirkpatrick Management Co., Inc., and Section C Homeowners Association, Inc.

7.      Motorists Mutual Insurance Co. ("Motorists Mutual") is a regional insurance

---

[1] *See* ¶ 15 below.

[2] *See* ¶s 15-17 below.

company based in Columbus, Ohio.  Motorists Mutual insured G.T. Services, Inc. d/b/a Green Touch Services, Inc., a company that provided snow plowing services.

8.      William Stillwell is a Medicare beneficiary currently living in the Tampa Bay area.  He is a retired Indiana University professor.  Mr. Stillwell was covered by the Indiana University Retiree Health Plan from his retirement date of January 1, 2010 until he became eligible for Medicare when he turned 65 years old in March 2011.

9.      Penelope Stillwell is William Stillwell's wife.  She is a graduate of Indiana University School of Law – Indianapolis and lives in the Tampa Bay area with her husband William Stillwell.

## THE MEDICARE SECONDARY PAYER ("MSP") ACT

10.     The Medicare Secondary Payer Act ("MSP") prohibits payment by Medicare as a primary payer where payment "has been made, or can reasonably be expected to be made under a … liability insurance policy or plan …."  42 U.S.C. § 1395y(b)(2)(A).

## MSP VIOLATIONS AS FALSE CLAIMS ACT VIOLATIONS

11.     Knowingly submitting non-reimbursable claims to the Medicare program for payment violates the False Claims Act. *United States ex rel. Walker v. R&F Properties of Lake County, Inc.,* 433 F.3d 1349, 1356 (11th Cir. 2005) ("Medicare claims may be false if they claim reimbursement for services or costs that….are not reimbursable….").

12.     Numerous courts have held that insurers' violations of the Medicare Secondary Payer Act can cause the submission of false claims to Medicare:

> *United States ex rel. Drescher v. Highmark, Inc.,* 305 F.Supp.2d 451, 461 (E.D. Pa. 2004) ("If Highmark, for instance, specifically directs the provider to submit the claim to Medicare for payment, or otherwise suggests to the provider that Medicare should be the primary payer, then the United States may have a claim against Highmark under the FCA").

3

*United States ex rel. St. Joseph's Hospital, Inc. et al. v. United Distributors, Inc.,* 2015 WL 8207477, \*7 (S.D. Ga., December 7, 2015) (denying defendants' summary judgment motions where "in at least two circumstances [defendants'] statements regarding Medicare's responsibility as primary insured directly resulted in claims made to the Medicare system").

*United States ex rel. Jersey Strong Pediatrics, LLC v. Wanaque Convalescent Center et al.,* 2017 WL 2577544, \*4 (D.N.J., June 14, 2017) (holding that defendants fraudulently billing Medicare as primary payer in violation of MSP Act constitutes an implied false certification under the False Claims Act, but dismissing FCA claim for failure to plead that MSP lawyer material to government's decision to pay the submitted claims).

*Negron v. Progressive Casualty Insurance Co.,* 2016 WL 796888, \*7 (D.N.J., March 1, 2016) ("By remaining ignorant of the fact that Relator did not have qualifying health insurance (i.e., a non-Medicare/Medicaid health insurance policy) for a health first policy, Relator's auto insurer caused Relator's health providers to treat Medicare as the primary payer of Relator's auto-related medical costs").

*United States ex rel. Sharp v. Eastern Oklahoma Orthopedic Center,* 2009 WL 499375, \*17 (N.D. Okla., February 27, 2009) ("The Court finds Relator's allegations sufficient to state a claim for an FCA violation. Relator alleges that EOOC submitted false claims — i.e., claims that were false on their face—by knowingly omitting relevant information regarding secondary payers from a claim and that EOOC did so in order to conceal later payments received by secondary payers").

## FACTUAL BACKGROUND

13.     On December 13, 2010, William Stillwell was severely injured due to slipping

and falling on ice and snow outside his home in Indianapolis, Indiana. In March 2011, Mr.

Stillwell became a Medicare beneficiary when he turned 65 years old.

14.     William Stillwell's left ankle was gravely damaged in this accident. On July 5,

2011, Mr. Stillwell's lower leg had to be amputated. His other leg is in danger of also being

amputated. Mr. Stillwell has received a good faith estimate that his lifetime medical expenses will

total between $871,559.55 and $935,559.60. **Exhibit 1**.

15.     Beginning in November 2011, Mr. Stillwell and Penelope Stillwell were

plaintiffs in a lawsuit against various defendants who failed to properly remove the snow and ice

from outside his home, including Eagle-Kirkpatrick Management Co., Inc.; Kirkpatrick

4

Management Co., Inc.; Section C Homeowners Association, Inc.; and G.T. Services, Inc., d/b/a Green Touch Services Inc. These defendants were insured by Defendants State Farm Fire and Casualty Company and Motorists Mutual Insurance Co.

## FALSE CLAIMS ACT VIOLATIONS

16.     Defendants State Farm and Motorists Mutual fraudulently caused Medicare to pay claims for services provided to William Stillwell which under the MSP Act should not have been paid by Medicare. **See Composite Exhibit 2** (Medicare EEOB forms). In addition, State Farm and Motorists Mutual have conspired to illegally shift William Stillwell's future medical expenses resulting from this accident from liability insurance carriers onto the Medicare program. **See Exhibits 3 and 4** (Motorist Mutual and State Farm release forms).

17.     Motorists Mutual pushed Relators to sign a release agreement (**Exhibit 3**) which falsely stated (1) that "William Stillwell has completed treatment for his injuries suffered in the Incident", and (2) that "[b]ased upon consultation with her (sic) medical care providers, William Stillwell and Penelope Stillwell do not anticipate the need for future medical care." Motorists Mutual knew these statements in its proposed release were false because Motorists Mutual had already been provided with the life care plan showing William Stillwell's future projected medical expenses as being between $871,559.55 and $935,559.60. Motorists Mutual therefore knew that in truth and in fact that William Stillwell had **not** completed treatment for the injuries he suffered in the fall and that William Stillwell definitely had need for future medical care.

18.     State Farm pushed Relators to sign a later global release agreement (**Exhibit 4**)[3] which falsely stated that that the "future medical care" of William Stillwell and Penelope Stillwell "shall not be affected by the terms and conditions of this document", despite the fact that State

---

[3] Although Relators never signed **Exhibit 4**, the global release agreement drafted by State Farm, the court included this release language in its final order dated July 26, 2017.

Farm acknowledged in this very release that William Stillwell was a Medicare beneficiary who had "an obligation to reimburse Medicare ... for medical services rendered to date in this matter." State Farm knew that this statement in its global release was false because it knew (1) that William Stillwell had a large-scale need for continuing medical services as documented in **Exhibit 1** given his left foot amputation and possible right foot amputation;[4] (2) that its global release would force Medicare to pay for medical expenses which reasonably should have been paid for by a liability insurance policy or plan; and (3) that by pushing William Stillwell's future medical expenses onto the Medicare program, William Stillwell would be required to pay 20 percent of those costs when he rightfully should have had to pay none of those costs under the insurance policies issued by State Farm and Motorists Mutual.

19.     Both State Farm and Motorists Mutual have individually and in concert with each other sought to cause the submission of claims to Medicare for the continuing care of William Stillwell which are false and fraudulent because such costs are excluded from coverage under Medicare since they should be paid instead "under a ... liability insurance policy or plan ....." 42 U.S.C. § 1395y(b)(2)(A). State Farm and Motorists Mutual acted knowingly under the False Claims Act because both companies were aware that William Stillwell was a Medicare beneficiary and that the Medicare Secondary Payer Act applied.

## COMPANY-WIDE POLICIES

20.     Both State Farm and Motorists Mutual acted in the William Stillwell case according to national corporate policies. For example, the releases attached as **Exhibits 3 and 4** are form documents. In addition, State Farm's counsel in the William Stillwell case, Bradley Schulz, is a State Farm employee.

---

[4] *See* February 2, 2017 email from State Farm Litigation Counsel Bradley Schulz attached as **Exhibit 5** noting that "a life care plan" and "a catastrophic injury" are "both present here."

## COUNT I

### PRESENTING AND CAUSING TO BE PRESENTED FALSE AND FRAUDULENT CLAIMS IN VIOLATION OF 31 U.S.C. § 3729(a)(1)(A)

21.     Relators reallege and incorporate by reference paragraphs 1 through 20.

22.     From at least 2016, Defendants knowingly caused to be presented claims to the

Medicare program, specifically including the claims listed in **Composite Exhibit 2**, which were

false and fraudulent because such claims were ineligible for reimbursement under the Medicare

Secondary Payer Act, 42 U.S.C. § 1395y(b)(2)(A).

## COUNT II
### MAKING FALSE RECORDS OR STATEMENTS MATERIAL TO FALSE AND FRAUDULENT CLAIMS IN VIOLATION OF 31 U.S.C. § 3729(a)(1)(B)

23.     Relators reallege and incorporate by reference paragraphs 1 through 20.

24.     From at least 2016, Defendants knowingly made false records or statements,

specifically including release agreements such as **Exhibits 3 and 4**, material to false and fraudulent

claims presented to the Medicare program, specifically including the claims listed in **Composite

Exhibit 2.** These release agreements were false and fraudulent and material to false and fraudulent

claims because they were designed to force the Medicare program to pay for medical expenses

which under the Medicare Secondary Payer Act were required to be paid for by a liability insurance

policy or plan.

### CONSPIRING TO CAUSE TO BE PRESENTED FALSE AND FRAUDULENT CLAIMS AND TO MAKE FALSE RECORDS AND STATEMENTS MATERIAL TO FALSE AND FRAUDULENT CLAIMS IN VIOLATION OF 31 U.S.C. § 3729(a)(1)(C)

25.     Relators reallege and incorporate by reference paragraphs 1 through 20.

26.     From at least 2016, Defendants knowingly conspired and agreed together to (1) knowingly cause to be presented claims to the Medicare program, specifically including the claims listed in **Composite Exhibit 2,** which were false and fraudulent because such claims were ineligible for reimbursement under the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(2)(A); and (2) knowingly make false records and statements, specifically including release agreements such as **Exhibits 3 and 4**, which were false and fraudulent because they were designed to force the Medicare program to pay for medical expenses which under the Medicare Secondary Payer Act were required to be paid for by a liability insurance policy or plan.

**PRAYER FOR RELIEF**

Wherefore, Relators respectfully request this Court enter judgment against Defendants and order:

(a) That the United States be awarded damages in the amount of three times the damages sustained because of the false and fraudulent claims alleged within this Complaint, as the False Claims Act provides;

(b)     That maximum civil penalties be imposed for each and every false and fraudulent claim that the Defendants have presented and caused to be presented;

(c)     That pre and post-judgment interest be awarded, along with reasonable attorneys' fees, costs and expenses which Relators necessarily incurred in bringing and pressing this action;

(d)     That the Court grant permanent injunctive relief to prevent any recurrence of the False Claims Act violations for which redress is sought in this Complaint;

(e)     That Relators be awarded the maximum relator share allowed pursuant to

8

the False Claims Act; and

(f)    That the Court award such other and further relief as it deem proper.

## DEMAND FOR JURY TRIAL

Relators, on behalf of themselves and the United States, demands a jury trial on all claims alleged herein.

Respectfully submitted,

**Kevin J. Darken**
Florida Bar No. 0090956
kdarken@tampalawfirm.com
THE BARRY A. COHEN LEGAL TEAM
201 East Kennedy Boulevard, Ste. 1950
Tampa, Florida 33602
Telephone: (813) 225-1655
Facsimile: (813) 225-1921
Counsel for *Qui Tam* Relators

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing False Claims Act Complaint and Demand for Jury Trial has been furnished by certified mail return receipt requested to: Acting United States Attorney **W. Steven Muldrow**, United States Attorney's Office, 400 N. Tampa Street, Ste. 3200, Tampa, FL 33602; and to Attorney General **Jeff Sessions**, Dept. of Justice, 950 Pennsylvania Ave., N.W., Washington, D.C. 20530 on this 10th day of August 2017.

**Kevin J. Darken**

9