# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**WILLIAM STILLWELL and**
**PENELOPE STILLWELL,**

     **Plaintiffs,**

**v.**                          **Case No.: 8:17-cv-1894-T-23AAS**

**STATE FARM FIRE & CASUALTY**
**CO. and MOTORISTS MUTUAL**
**INSURANCE CO.,**

     **Defendants.**

_____/

## <u>REPORT AND RECOMMENDATION</u>

William and Penelope[1] Stillwell sue the defendants, State Farm Fire & Casualty Company (State Farm) and Motorists Mutual Insurance Company (Motorists Mutual), for claims under the False Claims Act (FCA) and the Medicare Secondary Payer Act (MSP Act). (Doc. 61). The defendants move to dismiss for failure to plead the FCA claims with particularity and failure to state a cause of action. (Docs. 56, 57). The Stillwells oppose both motions. (Doc. 62).

Both motions were referred for a report and recommendation for the appropriate dispositions. (Doc. 68). The motions should be **GRANTED.**

---

[1] The amended complaint identifies Mrs. Stillwell as a party (Doc. 61, ¶ 4), but the factual allegations only address Mr. Stillwell's injuries and the Medicare bills submitted for his healthcare (*Id.* at ¶¶ 50–55, 59–60). Mrs. Stillwell does not appear to allege any potential false claims submitted on her behalf to the U.S. government.

# I. BACKGROUND

## A. Procedural History

The Stillwells filed their *qui tam* complaint under seal. (Doc. 1). After the Department of Justice declined to intervene, the court unsealed the complaint and the Stillwells served the defendants. (Docs. 7, 8, 12, 13). The defendants timely moved to dismiss the complaint. (Docs. 23, 26). The Stillwells successfully sought leave to file an amended complaint. (Docs. 35, 55). In the amended complaint, the Stillwells allege claims under the FCA and the MSP Act. (Doc. 61).

## B. Statement of Facts[2]

On December 13, 2010, Mr. Stillwell slipped and fell on the front steps of his home in Indiana. (Doc. 61, ¶ 50). On March 30, 2011, Mr. Stillwell became eligible for Medicare benefits. (*Id.* at ¶ 51). Mr. Stillwell also had a Medigap insurer, Anthem

---

[2] This statement of facts derives from factual allegations in the amended complaint (Doc. 61), which the court must accept as true in ruling on the motions to dismiss. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992). Except for facts that the court may judicially notice, the court should not ordinarily consider anything beyond the face of the complaint and its attachments when analyzing a motion to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997). Attachments to the complaint constitute "a part of the pleading for all purposes," Fed. R. Civ. P. 10(c), and can be considered in a motion to dismiss "if it is central to the plaintiff's claims and is undisputed in terms of authenticity," *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2013). Here, the Stillwells attach sixteen exhibits to their amended complaint. The Stillwells rely on those exhibits to support their allegations, and all parties use the exhibits to argue the motion to dismiss without converting the motion to dismiss into a motion for summary judgment. Likewise, this report's consideration of those exhibits does not convert the motions to dismiss to motions for summary judgment.

Blue Cross and Blue Shield (Anthem). (*Id.*). On July 5, 2011, Mr. Stillwell's lower leg was amputated because of the slip and fall accident. (*Id.* at ¶ 52). Mr. Stillwell sued various tortfeasors[3] for failing to maintain the pedestrian walkways and steps near the Stillwells' residence. (*Id.* at ¶ 53). State Farm and Motorists Mutual insured the tortfeasors. (*Id.*).

While the litigation pended, Mr. Stillwell received a letter from Medicare notifying him Medicare had received a "liability insurance (including self-insurance), no-fault insurance, or worker's compensation claim." (Doc. 61, Ex. B). The letter explained Medicare opened a Medicare Secondary Payer recovery case in its system and would keep a list of Medicare-paid medical items and services related to his claim. (*Id.* at p. 3). On June 24, 2016, Mr. Stillwell received a demand letter from Anthem for $6,769.86. (Doc. 61, Ex. C).

On August 20, 2016, the Stillwells appeared to have resolved the tortfeasor litigation in a settlement requiring $100,000.00 paid by State Farm and $100,000.00 paid by Motorists Mutual.[4] (Doc. 61, Ex. D). State Farm and Motorist Mutual paid the settlement amounts on behalf of the tortfeasors. (Doc. 61, Ex. J). On August 22,

---

[3] The Stillwells sued Eagle-Kirkpatrick Management Company Inc, Kirkpatrick Management Company, Inc., Section C Homeowners Association, Inc., and G.T. Services Inc. d/b/a Green Touch Services, Inc. (Doc. 61, ¶ 53).

[4] Mr. Stillwell received $5,000.00 from unused MedPay funds. (Doc. 61, Ex. D). MedPay is a form of no-fault insurance, i.e., "a payment is made by an insurer specifically to pay for medical expenses without regard to the fault of any party." (Doc. 61, p. 4)

2016, the Stillwells, who were represented by counsel,[5] executed a Settlement Recap delineating who was to receive what funds. (Doc. 61, Ex. E). Within the Settlement Recap, the Stillwells acknowledged the settlement was a voluntary act, the case would not go to trial, and any medical bills not paid by the settlement proceeds were the Stillwells' responsibility.[6] (*Id.*). On August 25, 2016, the Stillwells received a Memorandum of Understanding from State Farm explaining the total settlement and requiring the Stillwells to sign "an appropriate release or releases, at a later date formalizing the terms and conditions of the resolution of this matter" and a stipulation of dismissal. (Doc. 61, Ex. H, ¶¶ 2–3). The Stillwells executed and filed the Memorandum of Understanding with the Indiana court in December 2016. (*Id.*).

Also, in December 2016, Medicare sent Mr. Stillwell a letter confirming Mr. Stillwell settled his claim related to his accident and advising Mr. Stillwell he must reimburse Medicare for the $19,672.99 it paid for medical care related to his accident.

---

[5] Within the Settlement Recap, the Stillwells acknowledge:

> Further, this is a voluntary act on our part and we accepted this settlement offer after serious reflection and deliberation and that because, considering the strengths and weaknesses of our cause, we have concluded that this offer is in our own best interest. We were advised that we would have had the right to take our case to a jury trial . . . .

(Doc. 61, Ex. E).

[6] The Stillwells agreed "to pay any and all outstanding expenses, including litigation expenses, medical expenses, and/or other fees outstanding to any third party, including repayment to any medical provider and/or health insurance company, which are not being withheld above." (Doc. 61, Ex. E).

(Doc. 61, Ex. G). Apparently, Anthem agreed to reduce the amount Mr. Stillwell owed to $4,000.00. (Doc. 61, ¶ 62). Consequently, the $100,000.00 from State Farm would be divided into three checks: (1) Medicare payment ($19,672.99); (2) Anthem payment ($4,000.00); and (3) the remaining $76,327.01 to the Stillwells and their attorneys. (*Id.*). Motorists Mutual would send its $100,000.00 payment to the Stillwells and their attorneys. (*Id.* at ¶ 63).

In January 2017, Motorists Mutual provided an Indemnifying Release, but the Stillwells refused to sign because they claimed the release had overly broad terms and untrue assertions. (*Id.*). In February 2017, the Stillwells orally requested changes in the language of the Indemnifying Release and asked for the defendants to combine their respective releases into a single, global release. (*Id.* at ¶ 65; Doc. 61, Ex. M, ¶ 6). The defendants provided a global release with updated language, but the Stillwells refused to sign it. (Doc. 61, Ex. J).

Because the Stillwells did not sign the global release, Motorists Mutual moved to enforce the settlement. (Doc. 61, Ex. M). The Indiana state trial court enforced the settlement and incorporated the language from the global release including that the Stillwells would be responsible for their future medical care. (Doc. 61, Ex. N). The Stillwells unsuccessfully appealed.[7] (Doc. 61, Ex. O).

---

[7] State Farm filed a notice of supplemental authority showing the United States Supreme Court recently denied certiorari. (Doc. 65, Ex. 1).

## II.  ARGUMENTS

Motorist Mutual argues the Stillwells' amended complaint should be dismissed because it fails to plead the FCA claims with particularity, it fails to state a cause of action under the MSP Act, and "there is no requirement to submit potential future medical treatment to Medicare." (Doc. 56, p. 2).  Motorists Mutual asserts the Stillwells provide no facts to support that the global release caused Mr. Stillwell's healthcare providers to submit fraudulent claims to Medicare. (*Id.* at pp. 12–14).  Motorists Mutual argues no FCA claim can hinge on a release as false or fraudulent when other courts concluded the release is enforceable. (*Id.* at pp. 16–17).  Motorists Mutual also asserts it did not have to include a Medicare Set Aside (MSA) for future claims in the personal injury settlement. (*Id.* at pp. 17–19).

State Farm argues the Stillwells' amended complaint should be dismissed "because it fails to satisfy both the particularity requirement for pleading fraud, as required by Rule 9(b), . . . and the requirement under Rule 8 that the complaint present enough factual allegations to raise a right to relief above the speculate level." (Doc. 57, p. 1).  State Farm asserts the Stillwells provide no facts nor do the Stillwells' exhibits[8] show how State Farm knowingly caused any presentment of false claims to Medicare. (*Id.* at pp. 11–19).  State Farm asserts the Stillwells received the settlement proceeds directly and the settlement made clear the Stillwells would be

---

[8] "When there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control." *Friedman v. Market St. Mortg. Corp.*, 520 F.3d 1289, 1295 n.6 (11th Cir. 2008).

responsible for future medical bills. (*Id.* at pp. 15–17). State Farm argues the Stillwells allege no facts to support the claim that State Farm knowingly caused a false record to be created in the global release. (*Id.* at pp. 19–21). State Farm asserts the Stillwells fail to allege facts showing State Farm improperly avoided a Medicare obligation. (*Id.* at pp. 21–23). State Farm argues the Stillwells cannot show that State Farm failed to provide primary payment or reimbursement to Medicare. (*Id.* at pp. 23–24).

The Stillwells argue the amended complaint sufficiently pleaded that the defendants knowingly presented false claims to Medicare. (Doc. 62, pp. 2–14). The Stillwells assert the defendants caused Mr. Stillwell's healthcare providers to bill Medicare as the primary payer when Medicare should have been a secondary payer. (*Id.* at p. 9). The Stillwells argue the defendants acted with reckless disregard by failing to (1) alert the Center for Medicare Services (CMS) of their primary payer responsibility since Mr. Stillwell had Medicare; (2) comply with the Medicare, Medicaid and CHIP Extension of 2007, Section 111 that provides mandatory reporting requirements for non-group health plans like liability insurances; and (3) comply with "their FCA duty to make reasonable, prudent inquiries assuring compliance with governing regulations." (*Id.* at pp. 11–12). The Stillwells argue they alleged a concrete economic injury under the private cause of action within the MSP Act. (*Id.* at pp. 16–17).

## III.    LEGAL STANDARDS

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  To survive a motion to dismiss, a complaint's allegations "must 'possess enough heft' to set forth 'a plausible entitlement to relief.'" *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)).

Complaints filed by a *qui tam* relator under the FCA must comply with Rule 9(b).  *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005); *U.S. ex rel. Clausen v. Lab Corp. of Am., Inc.*, 290 F.3d 1301, 1308–10 (11th Cir. 2002).  Rule 9(b) does not permit a relator to "allege simply and without any stated reason for this belief that claims requesting illegally payments must have been submitted, were likely submitted, or should have been submitted to the Government." *Clausen*, 290 F.3d at 1311.  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Although Rule 9(b) does not abrogate the concept of notice pleading, it requires a complaint to set forth:

> (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the

> manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud.

*Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1257 (11th Cir. 2006) (quoting *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)); *see also U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006).

For FCA cases, the actual submission of the claim must be pleaded with particularity and not simply inferred from the circumstance. *Corsello*, 428 F.3d at 1013. "The particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Durham v. Business Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (citation and internal quotation omitted). Thus, "[w]hen an FCA claim is at issue, district courts must disregard assertions of law and conclusory statements of fact regarding a defendant's alleged fraudulent submissions to the Government." *United States ex rel. Doe v. Health First, Inc.*, No. 6:14–cv–501–Orl–37DAB, 2016 WL 3959343, at *4 (M.D. Fla. July 27, 2016) (citing *Clausen*, 290 F.3d at 1312). District courts should not "draw inferences in favor of relators concerning the submission of fraudulent claims because doing so would strip all meaning from Rule 9(b)'s requirements of specificity." *Doe*, 2016 WL 3959343, at *4 (citation and internal quotation omitted).

## IV. LAW REGARDING MSP ACT AND MEDICAL SET ASIDE AGREEMENTS

Before 1980, "Medicare paid for all medical treatment within its scope and left

private insurers merely to pick up whatever expenses remained." *Bio–Med. Applications of Tenn., Inc. v. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 656 F.3d 277, 278 (6th Cir. 2011). In 1980, to curb the rising costs of Medicare, Congress enacted the MSP Act, which changed the prior system and made private insurers covering the same treatment the primary payers and Medicare the secondary payer. *Id.* "Medicare benefits became an entitlement of last resort, available only if no private insurer was liable." *Humana Med. Plan, Inc. v. Western Heritage Ins. Co.*, 832 F.3d 1229, 1234 (11th Cir. 2016).

The MSP Act designates when Medicare will pay for medical items or services as the primary payer and when Medicare will pay as the secondary payer. 42 U.S.C. § 1395y(b). When an individual has private coverage, such as no-fault insurance or liability insurance, the MSP Act establishes Medicare's status as a secondary payer to a primary plan. § 1395y(b)(2). Medicare will send a confirmation explaining a liability insurance, no-fault insurance, or workers' compensation claim was filed with Medicare and a Medicare Secondary Payer recovery case was established in the system. (*See* Doc. 61, Ex. B). Typically, Medicare does not pay for items or services for which a primary plan has paid or can reasonably be expected to pay. 42 U.S.C. § 1395y(b)(2)(A).

However, Medicare may make a conditional payment despite its status as secondary payer. § 1395y(b)(2)(B). When the primary plan does not fulfill its duties, the Secretary of Health & Human Services (Secretary) may make a payment

conditioned on reimbursement. § 1395y(b)(2)(B)(i). If the Secretary makes a conditional payment, the primary plan must reimburse the Secretary. § 1395y(b)(2)(B)(ii). The MSP Act also establishes and defines a government cause of action to recover from a primary plan. § 1395y(b)(2)(B)(iii).

For future medical expenses in workers' compensation cases, the Center for Medicare Services (CMS) promulgated regulations that require creating a Medicare Set Aside (MSA) account. *See* 42 C.F.R. § 411.46(d)(2). The MSA allocates a portion of a workers' compensation award to pay potential future medical expenses resulting from the work-related injury so Medicare need not pay. *Aranki v. Burwell*, 151 F. Supp. 3d 1038, 1040 (D. Ariz. 2015). While approval by CMS of MSAs in workers' compensation claims is not a requirement, it is recommended. *See Rood v. New York State Teamsters Conf. Pension and Retirement Fund*, 39 F. Supp. 3d 241, 246 n.2 (N.D.N.Y 2014). Importantly, no federal law or CMS regulation requires creating an MSA for personal injury settlements to cover potential future medical expenses.[9] *Id.;*

_____

[9] On June 15, 2012, CMS published a notice of proposed rulemaking on options to clarify how beneficiaries can meet their obligations to protect Medicare's interest under the MSP Act for claims involving liability insurance when future medical care may occur or the settlement or judgment releases claims for future medical care. Medicare Program; Medicare Secondary Payer and "Future Medicals," 77 Fed. Reg. 35917-02, 35918 (June 15, 2012). The notice stated that, unlike in certain workers' compensation situations in which Medicare has an MSA review process to determine whether a proposed set-aside amount can meet obligations related to future medical expenses, to date, Medicare has not established a similar process for MSP Act obligations about future medicals in liability insurance situations. *See id.* at 35919. CMS did not create a process for any subsequent action following the Notice. *See Aranki*, 151 F. Supp. 3d at 1040 n.1.

*see also Bruton v. Carnival Corp.*, No. 11–21697–CIV, 2012 WL 1627729, at *3 (S.D. Fla. May 2, 2012).

## V. ANALYSIS OF ARGUMENTS

State Farm and Motorists Mutual move to dismiss all claims from the Stillwells' amended complaint. (Docs. 56, 57). The four claims are Presenting or Causing Presentment of a False Claim under 31 U.S.C. § 3729(a)(1)(A) (Count I); Knowingly Presenting a False or Fraudulent Record under 31 U.S.C. § 3729(a)(1)(B) (Count II); False Record to Avoid an Obligation to Refund under 31 U.S.C. § 3729(a)(1)(G) (Count III); and Private Cause of Action under the MSP Act (Count IV). The court will address two overall pleading defects before substantively addressing each count.

### A. Overall Pleading Defects

#### 1. Failing to Distinguish between the Defendants

If a plaintiff sues more than one defendant for fraud, "the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Brooks*, 116 F.3d at 1381. A plaintiff cannot treat all the defendants as one singular defendant because to "satisfy Rule 9(b)'s particularity requirement, the plaintiff must allege specifically a fraudulent act by each defendant." *U.S. ex rel. Schiff v. Norman, et al.*, No. 8:15–cv–1506–T–23AEP, 2019 WL 264253, at *1 (M.D. Fla. Jan. 2, 2018) (citing *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007)).

Here, the Stillwells fail to distinguish between the defendants in any of the four claims. Although the Stillwells separately identify the two defendants early in the pleading (Doc. 61, ¶¶ 5–6), the Stillwells do not differentiate the facts and actions of each defendant in this alleged fraud on Medicare (*Id.* at ¶¶ 69–108). Because the amended complaint fails to describe with particularity each defendant's participation in the alleged fraud, the amended complaint violates Rule 9(b).

### 2. Shotgun Pleadings

The Stillwells' amended complaint includes these allegations:

82. Relators re-allege and incorporate by reference the allegations contained in the foregoing paragraphs of this Complaint. [Count II]

.   .   .

90. Relators re-allege and incorporate by reference the allegations contained in the foregoing paragraphs of this Complaint. [Count III]

.   .   .

97. Relators re-allege and incorporate by reference the allegations contained in the foregoing paragraphs of this Complaint. [Count IV]

(Doc. 61, ¶¶ 82, 90, 97). Including these paragraphs in Counts II through IV is a shotgun pleading.

In shotgun pleadings, "each count adopts the allegations of all preceding counts." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015) (footnotes omitted). Shotgun pleadings fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323 (footnote omitted). The Stillwells' inclusion of these paragraphs

as the first paragraphs in Counts II through IV makes it "exceedingly difficult, if not impossible to know which allegations pertain to that count." *Keith v. DeKalb Cty., Ga.*, 749 F.3d 1034, 1045 n.39 (11th Cir. 2014). For this reason, the amended complaint violates Rule 8(a)(2).

### B. Claim-Specific Deficiencies

#### 1. Count I—31 U.S.C. § 3729(a)(1)(A)

Under the FCA, a defendant "who knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" is liable to the government. 31 U.S.C. § 3729(a)(1)(A). The elements of a § 3729(a)(1)(A) claim are (1) the defendant presented or cause to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; (3) the defendant knew the claim was false or fraudulent; and (4) the falsity or fraud was material. *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2001–04 (2016); *U.S. ex rel. Phalp v. Lincare Holdings, Inc.*, 857 F.3d 1148, 1154 (11th Cir. 2017).

##### a. Presentment of Claims

To satisfy the first element of § 3729(a)(1)(A), a relator must show the defendants presented or directly induced the submission of false or fraudulent claims to the government. *Escobar*, 136 S. Ct. at 1996. The submission of particular claims to the government must be alleged with particularity to satisfy Rule 9(b). "[S]ome indicia of reliability must be given in the complaint to support the allegation of *an actual false claim* for payment being made to the Government." *Clausen*, 290 F.3d at

14

1311. Complaints that merely make conclusory allegations that claims were submitted are insufficient. *See id.* at 1312; *Corsello*, 428 F.3d at 1013. To provide indicia of reliability, a relator may state specific billing data—such as amounts, dates, names, or services rendered—or they can attach copies of specific bills. *See Corsello*, 428 F.3d at 1013; *Clausen*, 290 F.3d at 1312.

Including all details about bills may not be necessary sometimes. *Hill v. Morehouse Med. Assocs., Inc.*, No. 02–14429, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003). If a relator knows of the alleged fraudulent billing practices firsthand, there may be sufficient indicia of reliability to allow the relator to avoid pleading specific information about particular bills. *United States ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 591 F. App'x 693, 704 (11th Cir. 2014). But "a plaintiff-relator without first-hand knowledge of the defendants' billing practices is unlikely to have a sufficient basis for such an allegation." *Id.* A district court must analyze the totality of the circumstances case-by-case to determine whether a relator has met the requirement of providing sufficient indicia of reliability. *See Atkins*, 470 F.3d at 1358.

The Stillwells allege the defendants' pursuit to enforce the settlement agreement lacking a Medicare Set Aside (MSA) caused Mr. Stillwell's healthcare providers to provide fraudulent and false claims to Medicare. (Doc. 61, ¶ 72). The Stillwells attach to the amended complaint claims submitted to Medicare from November 2016 to January 2017 as evidence that the defendants caused Mr. Stillwell's healthcare providers to provide fraudulent claims to Medicare. (Doc. 61,

Ex. P).

In no paragraph of the Stillwells' amended complaint do the Stillwells allege facts about the alleged misrepresentation, such as whether it was oral or written, what defendants stated, who or even which defendant stated it and to whom, when it was stated, where it was stated, what claim was actually submitted to Medicare, by whom it was submitted, or when it was submitted. Rather, the Stillwells vaguely and conclusively assert the defendants' collective "actions, claims processing procedures, and failure to report caused Mr. Stillwell's healthcare providers to submit claims to Medicare for medical items or services" when the defendants had primary payer responsibility. (Doc. 61, ¶ 73). Conclusory allegations are insufficient to support a claim under the FCA. *See Corsello*, 428 F.3d at 1014.

Even looking at the Stillwells' exhibits, only one exhibit detailing summaries of therapeutic exercises and procedures (Doc. 61, Ex. P) shows claims submitted to Medicare. Even though these summaries include dates, times, and services provided, they specifically state "THIS IS NOT A BILL." (*Id.*). The statements also are from November 2016 to January 2017, before the defendants submitted the global release to the Stillwells and before the defendants sought enforcement of the global release in the Indiana state trial court. Those dates of treatment occurred after the Stillwells signed the Memorandum of Understanding and Settlement Recap (Doc. 61, Exs. E, H), and after Medicare received notice of the settlement (Doc. 61, Ex. G). The Medicare statements from November 2016 to January 2017 cannot support a claim

16

under Count I because the Settlement Recap stated any outstanding medical bills not specified are the Stillwells' responsibility.  (Doc. 61, Ex. E)

### b.     False Claims

To satisfy the second element of a 31 U.S.C. § 3729(a)(1)(A) claim, a relator must identify with particularity the specific document and statement alleged to be false.  *U.S. ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1225 (11th Cir. 2012).  A claim is considered false under the False Claims Act if it is factually or legally false.  *Prime v. Post, Buckley, Schuh & Jernigan, Inc.*, No. 6:10–cv–1950–Orl–36DAB, 2013 WL 4506357, at *8 (M.D. Fla. Aug. 23, 2013).  "'A claim is factually false when the claimant misrepresents what goods or services that it provided to the Government and a claim is legally false when the claimant knowingly falsely certifies that it has complied with a statute or regulation the compliance with which is a condition for Government payment.'"  *Id.* (quoting *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 305 (3d Cir. 2011) (abrogated on other grounds)).

Legal falsity may be based on two types of false certifications, express and implied.  *United States ex rel. Schubert v. All Children's Health Sys., Inc.*, No. 8:11–cv–1687–T–27EAJ, 2013 WL 1651811, at *3 (M.D. Fla. Apr. 16, 2013).  "'Under the express false certification theory, an entity is liable under the FCA for falsely certifying that it is in compliance with regulations which are prerequisites to Government payment in connection with the claim for payment of federal funds.'"

*Prime*, 2013 WL 4506357 at *8 (quoting *Wilkins*, 659 F.3d at 305). Here, the Stillwells did not use the express false certification theory, but the Stillwells argue the claims are false "under the implied false certification theory." (Doc. 62, p. 9).

Under the implied false certification theory, "'liability is premised on the notion that the act of submitting a claim for reimbursement itself implies compliance with governing federal rules that are a precondition to payment.'" *Prime*, 2013 WL 4506357 at *8 (quoting *Wilkins*, 659 F.3d at 305); *see also McNutt ex rel. United States v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1259 (11th Cir. 2005). If the rules at issue are conditions of payment, rather than conditions of participation in a particular program, the implied false certification may be actionable under the FCA. *See Baklid–Kunz v. Halifax Hosp. Med. Ctr.*, No. 6:09–cv–1002–Orl–31TBS, 2014 WL 2968251, at *5 (M.D. Fla. July 1, 2014) (citing *United States ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1220 (10th Cir. 2008)).

The Stillwells assert the claim is legally false based on the implied false certification theory. (Doc. 62, p. 9). The Stillwells' theory is based on the global release not including a Medicare Set Aside (MSA) for future medical expenses. (Doc. 61, ¶ 64). The Stillwells allege the defendants wrongfully enforced a release of responsibility for Mr. Stillwell's future medical expenses and failed to obtain a proper release and waiver from Medicare for an MSA for Mr. Stillwell's future medical expenses. (*Id.* at ¶ 72). According to the Stillwells, because the defendants should not have been released from responsibility for future medicals and there was no MSA

created to address future medical expenses, the defendants should have remained primary payers preventing Mr. Stillwell's healthcare providers from submitting future claims to Medicare. (*Id.*). The Stillwells have not stated a plausible entitlement to relief because they have not alleged facts showing the defendants made false claims under the FCA.

First, the Indiana courts enforced the Stillwells' settlement agreement, which did not require an MSA for future medical expenses. (Doc. 61, Ex. N). This court will not determine whether the Indiana courts[10] were correct. "Federal courts must accord the same preclusive effect to a state court judgment as would be accorded that judgment under the law of the state in which the judgment was rendered." *Harbuck v. Marsh Block & Co.*, 896 F.2d 1327, 1328 (11th Cir. 1990). Thus, the Indiana court's decision enforcing the global release, which relieves the defendants from responsibility for Mr. Stillwell's future medical expenses, discredits part of the Stillwells' theory. Because the Stillwells were responsible for any future medical liens or bills, the defendants had no requirement to report any primary payer obligation for future medical expenses to Medicare.

Second, the Stillwells allege the defendants "failed to obtain a proper release and waiver from Medicare by way of a Medicare Set Aside for future medical

---

[10] The Indiana trial court enforced the settlement between the Stillwells and the defendants because of the Memorandum of Understanding signed by the Stillwells. (Doc. 61, Ex. N). After unsuccessfully appealing in the Indiana court system (Doc. 61, Ex. O), the Stillwells sought certiorari at the United States Supreme Court, who denied the petition (Doc. 65, Ex. A).

expense." (Doc. 61, ¶ 72). Within that allegation, the need for an MSA for future medical expenses is unsupported by case law. While an MSA for future medical expenses in a settlement agreement may be a prudent approach, no federal law or regulation requires an MSA in personal injury settlements. *See Sipler v. Trans Am. Trucking, Inc.*, 881 F. Supp. 2d 635, 638 (D.N.J. 2012). Although the Stillwells' exhibits mention an MSA (including discussions between attorneys and the expected cost for future medical care (Doc. 61, Exs. K, L)), the parties ultimately decided not to create an MSA. The parties properly exercised their discretion not to establish an MSA for their personal injury settlement. *See Bruton*, 2012 WL 1627729, at *3.

The Stillwells' allegation that the defendants needed to obtain a proper release and waiver from Medicare for not setting up an MSA is unsupported by the exhibits. The only mention of a waiver is when Medicare receives notice of a settlement. (*See* Doc. 61, Ex. G). Medicare sends a demand letter to the Medicare beneficiary, and within that letter, there is a "Right to Request a Waiver" provision, which provides the Medicare beneficiary with the option to waive Medicare's recovery of the amount owed if two conditions are met.[11] To obtain a waiver from reimbursing Medicare, the Medicare beneficiary must send a letter to Medicare explaining why they should receive a waiver of recovery of the amount owed. (Doc. 61, Ex. G). Thus, any waiver of recovery to Medicare is Mr. Stillwell's responsibility and not the defendants. (*See*

---

[11] *Reimbursing Medicare*, CMS.gov, https://www.cms.gov/Medicare/Coordination-of-Benefits-and-Recovery/Coordination-of-Benefits-and-Recovery-Overview/Reimbursing-Medicare/Reimbursing-Medicare- (last modified Apr. 10, 2019).

Doc. 61, Ex. K (providing an email from Mr. Stillwell noting his attorneys sought his permission to file a "Waiver of Medicare Recovery" on his behalf)).

### c. Knowingly Cause Presentment of False Claims

To survive a motion to dismiss, knowledge "may be alleged generally." Fed. R. Civ. P. 9(b); *see also Matheny*, 671 F.3d at 1224 (holding general allegations of knowledge were sufficient). The knowledge requirement of the FCA requires a person must have "actual knowledge of the information" in question or act in "deliberate ignorance" or "reckless disregard" of the truth or falsity of the information. 31 U.S.C. § 3729(b)(1)(A). Even if a defendant submits a false claim, if the defendant's interpretation of a statute or regulation was reasonable, and "if there is no authoritative contrary interpretation" of the rule, the relator cannot satisfy the knowledge requirement under the FCA. *United States ex rel. Hixson v. Health Mgmt. Sys., Inc.*, 613 F.3d 1186, 1190 (8th Cir. 2010). "The 'knowing' element of the False Claims Act was not meant to punish honest mistakes or incorrect claims submitted through mere negligence; it was meant to reach the situation where an individual has 'buried his head in the sand' and failed to make basic inquiries which would alert him that false claims are being submitted." *United States ex rel. Gillespie v. Kaplan Univ.*, No. 09–20756–CIV, 2013 WL 3762445, at *6 (S.D. Fla. July 16, 2013) (quoting *United States v. Kaman Precision Prods., Inc.*, No. 6:09–cv–1911–Orl–31GJK, 2011 WL 3841569 (M.D. Fla. Aug. 30, 2011)).

The Stillwells allege the defendants "knew or should have known that they

were causing Mr. Stillwell's healthcare providers to submit false or fraudulent claims under the MSP Act" and were deliberately ignoring and acting with reckless disregard as to the falsity of the claims under the MSP Act. (Doc. 61, ¶ 76). The facts and exhibits from the Stillwells' amended complaint contradict that allegation. CMS received notice about the liability insurance claim that created a Medicare Secondary Payer recovery case in the Medicare system for Mr. Stillwell. (Doc. 61, Ex. B). The Stillwells do not provide a completed version of Exhibit A, a Medicare questionnaire required by responsible reporting entities, in the exhibits attached to their amended complaint. (Doc. 61, Ex. A). But Exhibit B, the November 19, 2013 letter from CMS to Mr. Stillwell, showed CMS knew about the liability insurance claim and signifies the reporting requirement was satisfied. Neither the amended complaint nor its exhibits signal much less allege the defendants acted with reckless disregard to their responsibilities. Instead, the exhibits to the amended complaint reflect Medicare received notice of Mr. Stillwell's personal injury lawsuit and later settlement. (*See* Doc. 61, Exs. B, G).

### d.    Materiality

Under the FCA, material "means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4); *see also Escobar*, 136 S. Ct. at 2002. A representation about compliance with a statutory, regulatory, or contractual requirement must be material to the government's payment decision to be actionable under the FCA. *Escobar*, 136 S. Ct.

at 1996.  In *Escobar*, the Supreme Court advised the materiality standard was not met where noncompliance is "minor or insubstantial," or amounted to a "garden-variety breach[ ] of contract or regulatory violation[ ]."  *Id.* at 2002–03.  Instead, to be material, an omission must be significant enough that a government payor "would have attached importance to the violation in determining whether to pay the claim."  *Id.*  A relator must allege with particularity facts to support allegations of materiality.  *Id.* at 2004 n.6.

Although the dismissal of this FCA claim is appropriate because the Stillwells fail to show the defendants knowingly caused the presentment of false claims to the government, the Stillwells adequately allege materiality.  The Stillwells allege the implied false certification theory was material to Medicare's decision to pay Mr. Stillwell's healthcare providers.  (Doc. 61, ¶¶ 71–76)

The Stillwells sufficiently pleaded the MSP Act is material to the government's decision to pay Medicare claims in this context.  (*Id.*).  Specifically, the Stillwells showed, under the MSP Act and related regulations, Medicare becomes the secondary payer when a liability insurance holds the primary payer responsibility.  (*Id.* at ¶¶ 20–25).  Even though the Stillwells' implied false certification theory is too attenuated, the Stillwells provide specific facts to show that not following the reporting requirements would cause Medicare to remain the primary payer when Medicare should become secondary payer.  (*Id.* at ¶ 25).  Even though the facts and exhibits presented by the Stillwells do not show the defendants failed to comply with

the reporting requirements, the Stillwells met their burden to plead compliance with the MSP Act is material to an FCA claim.

*    *    *

The only element the Stillwells sufficiently allege is materiality. Because the Stillwells fail to state a claim and plead with particularity the remaining three elements of a claim under 31 U.S.C. § 3729(a)(1)(A), the defendants' motions to dismiss Count I should be granted.

## 2.    Count II—31 U.S.C. § 3729(a)(1)(B)

Under the FCA, a defendant who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" is liable to the government. 31 U.S.C. § 3729(a)(1)(B). "To prove a claim under § 3729(a)(1)(B), a relator must show that: (1) the defendant made (or caused to be made) a false statement, (2) the defendant knew it to be false, and (3) the statement was material to a false claim." *Phalp*, 857 F.3d at 1154.

For this provision, the FCA defines "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). "Under this version of the statute, a relator is not required to allege presentment because the statutory language includes no express presentment requirement." *United States ex rel. Patel v. GE Healthcare*, No. 14–cv–120–T–33TGW, 2017 WL 4310263, at *8 (citing *Hopper*, 588 F.3d at 1328).

The Stillwells allege the defendants submitted a false or fraudulent global

release from their personal injury lawsuit to the Indiana state trial court to evade the defendants' MSP Act obligations. (Doc. 61, ¶¶ 83, 85). The Stillwells state they never signed the global release, and the global release caused Mr. Stillwell's healthcare providers to submit claims to Medicare, as if it were the primary payer, when the defendants had a primary payer obligation. (*Id.* at ¶¶ 84, 86–88).

The defendants correctly argue the Stillwells fail to show how the global release was a false record submitted to Medicare (Doc. 57, p. 20) or how the global release forced Mr. Stillwell's healthcare providers to submit fraudulent claims to Medicare (Doc. 56, p. 12). Even though State Farm acknowledges the possibility of future medical services for Mr. Stillwell, the Stillwells conveyed they were not opposed to releasing the defendants against future medical liens. (Doc. 61, Ex. L). Based on this representation, the defendants drafted the global release and sent it to the Stillwells. (*Id.*). Because the Stillwells refused to sign the global release, the defendants sought enforcement of the settlement by the Indiana court. (Doc. 61, Ex. M). The unsigned global release is not a false record because the Indiana court validated the settlement agreement based on the Memorandum of Understanding between the parties and so enforced the settlement including the global release. (Doc. 61, Ex. N).

The amended complaint did not specify any claims that Mr. Stillwell's healthcare providers inappropriately submitted to Medicare because of the global release. (Doc. 61, ¶ 86). Rather, the court and the defendants are left to sift through

25

the Stillwells' amended complaint and exhibits to identify what claims are false and were submitted to Medicare.  The Stillwells provide only broad statements that "CMS contractors paid many of these false and fraudulent claims. *See* Exhibit P" (*Id*. at ¶79), and the "Releases caused Mr. Stillwell's healthcare providers to submit claims to Medicare for medical items or services" (*Id*. at ¶ 86).

However, those statements and exhibit fail to sufficiently plead the FCA claim under Rule 9(b) and are improperly incorporated by reference into this Count. Exhibit P provides summaries of services rendered from between November 2016 and January 2017.  (Doc. 61, Ex. P).  The global release was not created until February 2017.  (Doc. 61, Ex. M, ¶ 6).  There are no factual allegations for how the global release would cause Mr. Stillwell's healthcare providers to submit those summaries when the global release did not exist when Mr. Stillwell sought the treatment from those providers.   Rather, the Stillwells allege a scheme without sufficient factual allegations to support a plausible entitlement to relief.  The global release did not cause Mr. Stillwell's providers to submit the claims based on the dates of the services and the date the Stillwells received the global release from the defendants.

Because no false records or statements to support this claim have been pleaded with particularity, the court need not also address whether the global release and the exhibit showing summaries of services provided were material to a false claim.  Thus, the defendants' motions to dismiss Count II should be granted.

### 3. Count III—31 U.S.C. § 3729(a)(1)(G)

Under the FCA, the government may recover a civil penalty from any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G); *see also United States v. Pemco Aeroplex, Inc.*, 195 F.3d 1234, 1236 (11th Cir. 1999). Congress added this section, commonly called the "reverse-false-claim provision," in 1986 "'to provide that an individual who makes a material misrepresentation to avoid paying money owed the Government would be equally liable under the Act as if he had submitted a false claim to receive money.'" *Cullins v. Astra, Inc.*, No. 09–60696–CIV, 2010 WL 625279, at *5 (S.D. Fla. Feb. 17, 2010) *quoting* S. Rep. No. 99–345, at 18 (1986); 1986 U.S.C.C.A.N. 5266, 5283.

In a Section 3729(a)(1)(G) action, "the defendant's action does not result in improper payment by the government to the defendant, but instead results in no payment to the government when a payment is obligated." *United States ex rel. Bain v. Ga. Gulf Corp.*, 386 F.3d 648, 653 (5th Cir. 2004). A plaintiff must show these five elements to prevail on a reverse-false claim action: (1) a false record or statement and (2) the defendant's knowledge of the falsity; (3) that the defendant makes, uses, or causes to be made or used a false statement; (4) for the purpose to conceal, avoid, or decrease an obligation to pay money to the government; and (5) materiality of the misrepresentation. *U.S. ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 869 F. Supp. 2d

1336, 1346 (M.D. Fla. 2012); *see also Cullins*, 2010 WL 625279 at *5.

Here, the Stillwells simply make legal conclusions that the defendants violated this section of the FCA but make no factual allegations to support the claim. The Stillwells allege the defendants "caused to be made or used false records or false statements to conceal, avoid, or decrease an obligation to pay or transmit money or property to Medicare in violation of 31 U.S.C. § 3729(a)(1)(G), and knowingly concealed and improperly avoided or decreased an obligation to pay or transmit money to Medicare in violation of 31 U.S.C. 3729(a)(1)(G)." (Doc. 61, ¶ 96). The Stillwells also allege the defendants "submitted false or fraudulent Releases to the Marion County Superior Court of Indiana." (*Id.* at ¶ 92).

The amended complaint alleges no amounts owed to the government by the defendants or otherwise provides any other information to put the defendants on notice of the substance of the Stillwells' damages claims. The Stillwells' allegations related to this claim are general and conclusory and fail to meet the pleading requirements in Rule 9. And the only exhibit relating to the period applicable, Exhibit P, shows summaries of services received, but those summaries are not bills and shows payment was made to the government. (*See* Doc. 61, Ex. P). Thus, the defendants' motions to dismiss Count III should be granted.

### 4. Count IV—42 U.S.C. § 1395y(b)(3)(A)

Under the MSP Act, Paragraph (3)(A) states:

> There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a

28

primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A).

42 U.S.C. § 1395y(b)(3)(A). The MSP Act private cause of action is not a *qui tam* statute but is available to a Medicare beneficiary whose primary plan has not paid Medicare or the beneficiary's healthcare provider. *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1234 (11th Cir. 2009). To succeed, the Medicare beneficiary must show: "(1) the defendant's status as a primary plan; (2) the defendant's failure to provide for primary payment or appropriate reimbursement; and (3) the damages amount." *Humana Med. Plan, Inc.*, 832 F.3d at 1239. "Successful private plaintiffs receive double damages, and while they must give Medicare its share of the recovery, they can keep whatever is left over." *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1316 (11th Cir. 2019).

The Stillwells allege the defendants had to timely reimburse Medicare for conditional payments related to Mr. Stillwell's slip and fall but failed to do so. (Doc. 61, ¶ 105). Unlike the FCA claims, the Stillwells need not plead their MSP Act claim with particularity. However, the claim fails to meet the more lenient Rule 8 requirements.

### a.    Primary Payer

The pre-settlement agreement time frame begins with Mr. Stillwell's accident in 2010 and lasts until 2016. Medicare received notification of the liability insurance claim for Mr. Stillwell. (Doc. 61, Ex. B). Medicare specifically noted "a Medicare Secondary Payer (MSP) recovery case has been established in our system." (*Id.*).

Exhibit B, the November 19, 2013 letter from CMS to Mr. Stillwell, does not specific on who the liability insurance provider was. But State Farm and Motorists Mutual insured the tortfeasors in the Indiana litigation. (Doc. 61, ¶ 53). Thus, the defendants were primary payers while the litigation and settlement talks occurred.

### b. Failure to Provide Appropriate Reimbursement

The Stillwells fail to show how the defendants ignored their requirements as primary payers under the MSP Act. The Stillwells allege the defendants failed to reimburse Medicare for the conditional payments made (Doc. 61, ¶ 105), but the Stillwells' exhibits tell a different story. After the Stillwells signed the Settlement Recap and the Memorandum of Understanding, Medicare received notice of the settlement. (Doc. 61, Ex. G). Medicare then sent the Stillwells and their attorneys a letter identifying the amount owed to Medicare. (*Id.*). In the global release, State Farm deducted the amount owed to Medicare from its $100,000.00 payment. (Doc. 61, Ex. M). And when the Indiana court enforced the Memorandum of Understanding against the Stillwells, the Indiana court noted the "law firm of Cohen & Malad has previously deposited with the Clerk of Court any settlement funds on deposit in its IOLTA Trust Account remaining *after direct payments to lienholders*. The Court shall separately direct the disbursement of these remaining funds." (Doc. 61, Ex. N, ¶ 6) (emphasis added). Since the exhibits control, the Stillwells cannot show that the defendants failed to comply with their requirements as primary payers.

### c. Damages

While the plaintiff can recover double the damages in an MSP private cause of action, the plaintiff still must provide proof of the damages amount. *Humana Med. Plan, Inc.*, 832 F.3d at 1239. Here, the Stillwells conclusively allege "Mr. Stillwell suffered money damages as a direct result of Defendants['] . . . failure to reimburse the slip and fall accident-related medical expenses." (Doc. 61, ¶ 106). The Stillwells provide no damages amount in the complaint and Exhibit P (improperly incorporated by reference into this Count), provides only summaries of payments, paid after the Stillwells signed the Settlement Recap. Therefore, the Stillwells fail to provide facts to support a plausible entitlement to damages under the MSP Act private cause of action.

*        *        *

Because the Stillwells do not state a claim for a private action under MSP Act, the defendants' motions to dismiss Count IV should be granted.

## VI. CONCLUSION

After due consideration, it is respectfully **RECOMMENDED** that Motorists Mutual's motion to dismiss the Stillwells' amended complaint (Doc. 56) and State Farm's motion to dismiss the Stillwells' amended complaint (Doc. 57) be **GRANTED**, and the Stillwells' amended complaint be **DISMISSED**.[12]

---

[12] By statute, an action "may be dismissed only if the court and Attorney General give written consent to the dismissal and their reasons for consenting." 31 U.S.C. § 3730(b)(1). "The consent requirement in § 3730(b)(1) applies only to voluntary

**RECOMMENDED** in Tampa, Florida, on February 27, 2020.

*Amanda Arnold Sansone*
AMANDA ARNOLD SANSONE
United States Magistrate Judge

## NOTICE TO PARTIES

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. A party's failure to object timely in accordance with 28 U.S.C. § 636(b)(1) waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions. 11th Cir. R. 3-1.

---

dismissals." *Jallali v. Nova Southeastern Univ., Inc.*, 486 F. App'x 765, 767 (11th Cir. 2012). Thus, the court need not solicit the Attorney General's consent to dismiss the Stillwells' amended complaint. *See United States ex rel. Childress v. Ocala Heart Institute, Inc.*, No.5:13–cv–470–Oc–22PRL, 2015 WL 10742765, at *5 n.10 (M.D. Fla. Nov. 23, 2015).