UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PENELOPE STILLWELL, et al.,

     Plaintiffs,

v.                              CASE NO. 8:17-cv-1894-SDM-AAS

STATE FARM FIRE AND
CASUALTY CO., et al.,

     Defendants.
_____/

## **ORDER**

After falling outside his home in Indiana, William Stillwell (a Medicare beneficiary) and his wife, Penelope, sued in Indiana state court and claimed negligence against the homeowners' association, the property management company, and the landscaping company. The Stillwells settled with the defendants' insurers for a lump sum of $200,000. Although the Stillwells refused to execute the settlement documents, which include a release but include no "set aside" to cover William's future medical expenses (expected to exceed $700,000), the Indiana trial court held the settlement enforceable against the Stillwells. The Indiana Court of Appeals affirmed.

Claiming that the $200,000 settlement (which was insufficient to cover William's expected medical expenses) improperly shifts the burden of William's future medical expenses from the insurers to Medicare, the Stillwells sue the insurers

under the False Claims Act (FCA) and the Medicare Secondary Payer Act (MSPA). In essence, the Stillwells claim that, by failing either to settle for an amount exceeding the expected medical expenses or to provide in the settlement some other mechanism to pay future medical expenses, the insurers failed to discharge their primary-payer responsibility and remain primary payers for post-settlement medical expenses.  The Stillwells further argue that, by failing to report this purported primary-payer responsibility to the Centers for Medicare and Medicaid Services (CMS), the insurers caused William's doctors to falsely bill Medicare, instead of the insurers, as the primary payer for William's post-settlement medical expenses.

Although CMS, the agency that administers Medicare, regulates workers' compensation settlements that include a Medicare beneficiary, CMS has decidedly avoided regulating private liability settlements that include a Medicare beneficiary. Apparently conceding that no statute, regulation, or other authority requires that a liability settlement with a Medicare beneficiary cover future medical expenses, the Stillwells propose importing (by judicial fiat) into a private liability settlement the standard applied to a workers' compensation settlement.

This invitation to the judiciary to impose an otherwise inapplicable standard onto CMS's ample regulatory regime warrants rejection.  First, CMS can protect Medicare's interest by promulgating — as CMS has promulgated for workers' compensation — either a rule regulating a liability settlement or a mechanism for approving a proposed liability settlement.  But CMS has not.  Establishment of a rule or approval mechanism is exclusively either an executive or legislative prerogative.

- 2 -

Further, the proposed standard contravenes judicial policy encouraging settlement unless the law requires some restriction (such as, the limit on the ability to settle an FLSA claim).

The Stillwells in the third amended complaint cannot escape the peremptory conclusion that, by accepting the lump sum settlement the Stillwells released the insurers from the obligation to pay under the insurance policies, and consequently the Stillwells — not the insurers — became the primary payers for post-settlement medical expenses.  For these reasons, among others, the third amended complaint fails to state a claim and warrants dismissal with prejudice.  The details follow.

## BACKGROUND

The third amended complaint alleges the following facts, which are presumed true in resolving the insurers' motions to dismiss.  In December 2010, William slipped outside his home in Indiana and injured his left leg (Doc. 105 ¶ 66), which required continual medical attention and which resulted in May 2011 in the partial amputation of William's left leg.  (Doc. 105 ¶ 71)  The Stillwells sued the homeowners' association, the property management company, and the landscaping company in Indiana state court to recover damages, including past and future medical expenses.  (Doc. 105 ¶¶ 72–74)

After the injury, William became a Medicare beneficiary.  (Doc. 105 ¶ 69)  In November 2013, while the parties to the state-court action negotiated a settlement, CMS delivered to William a letter stating that the state-court action prompted the creation of a Medicare secondary-payer recovery account.  (Doc. 105-3)  Under the

MSPA, CMS will not pay a beneficiary's medical expenses if a primary payer, such as a private insurer or a tortfeasor (or a tortfeasor's insurer), "has paid or can reasonably be expected to pay" the expenses.  42 U.S.C. § 1395y(b)(2)(A)(ii).  After identifying a potential primary payer, CMS might "conditionally pay" the beneficiary's expenses, but the primary payer must reimburse CMS after the primary payer's responsibility is confirmed.  42 U.S.C. § 1395y(b)(2)(B).  The November 2013 letter advised William that CMS had identified potential primary payers for William's medical expenses and that CMS would require reimbursement if William obtained a judgment or settlement.  (Doc. 105-3 at 3)

In August 2016, the parties settled the Indiana action and executed a "settlement recap."  (Doc. 105-8)  In the recap, the state-court defendants agree to pay the Stillwells $200,000, less any medical expense reimbursements — the Medicare conditional payments included — paid directly by the insurers. (Doc. 105-8)  In return, the Stillwells acknowledge that for services rendered before the settlement William's healthcare providers and insurers will receive reimbursement from the settlement money and that the Stillwells become primarily responsible for future medical expenses.  (Doc. 105-8)  Further, the parties' memorandum of understanding states that the Stillwells will execute a release in exchange for the $200,000.  (Doc. 105-11)  The Stillwells filed the memorandum of understanding with the Indiana trial court in December 2016.  (Doc. 105-11)

After the settlement, CMS sent the Stillwells a letter requesting reimbursement for $10,575.35 in conditional payments but later revised the request to $19,672.99.

- 4 -

(Docs. 105-9 at 2; 105-10 at 2)  CMS calculated this figure by reducing $29,509.33 in conditional payments by a third, the contingency fee for the Stillwells' lawyer.[1] (Doc. 105-2)

In January 2017, Motorists Mutual tendered to the Stillwells a settlement check and release, but the Stillwells refused both.  (Doc. 105-14)  Instead, the Stillwells requested a revised joint release, specifically without a stipulation that William had completed the required medical care.  (Doc. 105-14)  The insurers acceded, but the Stillwells refused the revised joint release.  (Doc. 105-16)

After the Stillwells' lawyer deposited the settlement check into the lawyer's trust account pending disbursement, Motorists Mutual moved (Doc. 105-16) to enforce the settlement against the Stillwells, which motion the Indiana court granted. (Doc. 105-17)  The enforcement order incorporates the revised joint release presented to the Stillwells and specifically discharges the insurers from any claims "which have resulted or may in the future develop from [William's accident]" and holds the Stillwells "jointly and severally liable" to pay any present or future medical expense. (Doc. 105-17 at 3–4)  The Stillwells appealed, but the Indiana Court of Appeals affirmed.  (Doc. 105-18)   Both the Indiana Supreme Court and the United States Supreme Court declined discretionary review.

Two weeks after the Indiana trial court entered the enforcement order, the Stillwells began this *qui tam* action.  The Stillwells claim (Doc. 1) that by failing to

---

[1] To determine its reduction, CMS appears to use the pre-discount attorney's fee of $66,666.67 and to reduce the $29,509.33 by a third to arrive at $19,672.99.

discharge their duty as purported primary payers for William's medical expenses the insurers caused William's healthcare providers to submit claims to Medicare instead of the insurers and to submit claims that falsely listed Medicare as the primary payer. The Stillwells claim that the insurers both defrauded the government and injured the Stillwells.  The United States declines to intervene.  (Doc. 7)

Arguing that the complaint constituted an impermissible shotgun pleading and failed to allege a plausible claim, the insurers moved (Docs. 56, 57) to dismiss the first amended complaint.  An order (Doc. 80) adopts the magistrate judge's report and recommendation (Doc. 71) and dismisses the complaint with leave to amend.

In April 2020, after William's death, Penelope submitted a second amended complaint (Doc. 101), in which she sues on behalf of herself, her late husband's estate, and the United States.  After further leave to amend, Penelope submits a third amended complaint (Doc. 105), which remains materially unchanged from the original complaint.  Each insurer moves (Docs. 109, 110) again to dismiss.

## DISCUSSION

In ten counts, Penelope asserts five claims against each insurer.  Eight counts arise under the FCA, and two counts arise under the MSPA.  In Counts I and II, Penelope claims under 31 U.S.C. § 3729(a)(1)(A) that the insurers caused William's healthcare providers to present to CMS false claims.  In Counts III and IV, Penelope claims under 31 U.S.C. § 3729(a)(1)(B) that the insurers caused William's healthcare providers to submit to CMS false statements material to a false claim.  In Counts V and VI, Penelope claims under 31 U.S.C. § 3729(a)(1)(C) that the insurers conspired

both to conceal purported primary-payer responsibility and to cause William's healthcare providers to submit to CMS false claims.  In Counts VII and VIII, Penelope claims under 31 U.S.C. § 3729(a)(1)(G) that the insurers hid purported primary-payer responsibility to avoid an obligation to the government.  Finally, in Counts IX and X, Penelope claims under the MSPA that by hiding purported primary-payer responsibility the insurers forced the Stillwells to reimburse CMS for post-settlement medical expenses.

Moving to dismiss, the insurers argue that the third amended complaint's allegations fail to state a claim because the insurers complied with the primary-payer requirements and because the Stillwells — not the insurers — became the primary payers after enforcement of the settlement.  (Docs. 109 at 10; 110 at 17)  Also, the insurers argue that Counts I through VIII fail to state a claim that the insurers caused William's healthcare providers to submit to CMS false claims or false statements.  (Docs. 109 at 18–19; 110 at 18–19)  Further, the insurers argue that Counts V and VI fail to satisfy the particularity requirement under Rule 9(b), Federal Rules of Civil Procedure.  (Docs. 109 at 21; 110 at 22)  Finally, Motorists Mutual (but not State Farm) argues that the third amended complaint remains an impermissible shotgun pleading.  (Doc. 110 at 13)

## I.  *The complaint fails to demonstrate that the insurers concealed a primary-payer responsibility.*

Penelope asserts that the insurers owed to William both a "total payment obligation to claimant" (TPOC) and an "ongoing responsibility for medicals"

(ORM) but failed to properly report either obligation to CMS.[2]  Under the Medicare, Medicaid, and SCHIP Extension Act of 2007, Pub. L. No. 110-173, a primary payer must report to CMS after assuming either a TPOC or an ORM owed to a Medicare beneficiary.  *Dep't Health & Human Servs., MMSEA Section 111 NGHP User Guide, Chapter III: Policy Guidance* §§ 6.3–6.4.  A TPOC is a one-time payment typically resulting from a settlement or a judgment.  *Section 111 NGHP User Guide*, *Chapter II: Introduction and Overview* § 2.  An ORM is an obligation to pay a party's future medical expenses.  An ORM typically "only applies to no-fault and workers' compensation claims." *Section 111 NGHP User Guide, Chapter II: Introduction and Overview* § 2.

The third amended complaint's assertion that the insurers failed to properly report a TPOC or an ORM is a necessary predicate to each claim.  (Doc. 120 at 17, describing the failure to report properly as the "linchpin" to each claim)  The insurers again argue that, because Penelope fails to sufficiently support this assertion, each count must fail.

The insurers are again correct.  Assuming the truth of the factual allegations in the third amended complaint, Penelope fails to state a claim based on the insurers'

---

[2] In each count, Penelope realleges paragraphs 1–21 and 25–141 or paragraphs 1–24 and 27–141. Both ranges include paragraph 120: "State Farm and Motorists Mutual failed to report the MOU in accordance with TPOC obligations, and failed to report their ORM obligation . . . ."

allegedly concealing from CMS a TPOC or an ORM owed to William.[3]  Because Penelope cannot sustain this pivotal assertion, no count states a claim for relief.

### A. TPOC Reporting

The third amended complaint asserts that the insurers hid their primary-payer responsibility by failing to properly report a TPOC triggered by the settlement. (Doc. 105 ¶ 120)  Penelope pleads no facts to support this assertion and, further, the exhibits attached to the third amended complaint contradict the assertion.

Under the MSPA, a primary payer must report a TPOC to CMS when the primary payer becomes responsible to pay the TPOC.  *Section 111 NGHP User Guide*, *Chapter III: Policy Guidance* § 6.4.  A primary payer becomes responsible to pay a TPOC and must report the TPOC to CMS when the parties execute a settlement release or, if necessary, when an order enforces a settlement.  *Section 111 NGHP User Guide*, *Chapter III: Policy Guidance* § 6.4.  A primary payer must report (1) the identity of the beneficiary, the payer, and the beneficiary's attorney; (2) the date, nature, and cause of the injury; (3) the settlement date and amount; and (4) the responsibility, if any, of the payer for the beneficiary's future medical expenses.  (Doc. 105-1)

The first letter that CMS sent the Stillwells (Doc. 105-3) demonstrates that CMS learned of the Stillwells' claim nearly three years before the parties signed the settlement recap.  Further, the December 2016 letter (Doc. 105-10) demonstrates that

---

[3] Because they allege fraud under the FCA, Counts I through VIII must further comply with Rule 9(b). *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005). Counts IX and X, arising under the MSPA, need satisfy only Rule 8. Because each claim fails to satisfy Rule 8, Counts I through VIII necessarily fail to satisfy the more stringent requirement of Rule 9.

CMS knew the amount of both the settlement and the Stillwells' attorney's fee by December 2016, six months before the Indiana trial court enforced the settlement. The two letters, presented by Penelope, conclusively contradict the unsupported assertion that the insurers failed to report a TPOC.

## B. ORM Reporting

Also, the third amended complaint asserts that the insurers failed to report an ORM for William's post-settlement medical expenses.  But the insurers again argue correctly that Penelope's allegations demonstrate that the insurers had no ORM to report.

An ORM arises when a primary payer must pay a beneficiary's future medical expenses.  *Section 111 NGHP User Guide, Chapter IV: Technical Information* § 6.7. Penelope argues that, by failing to duly consider Medicare's interests when crafting the settlement, the insurers assumed, either contractually or by operation of law, an ORM for William's post-settlement medical expenses.  (Doc. 120 at 26–27) Penelope cites no statute, regulation, or other authority to support the premise that a primary payer who fails to consider Medicare's interests must assume and report an ORM for the beneficiary's post-settlement medical expenses.

Although conceding that "no law or regulation requires a liability insurer settling a personal-injury claim to create a 'Medicare Set Aside' to cover future medical expenses," Penelope argues that a settling party must consider Medicare's interests by (1) creating a "Medicare set aside," (2) segregating part of the settlement for future medical expenses, (3) paying part of the settlement into the Medicare Trust

Fund, or (4) proposing to CMS an alternative plan.  (Doc. 120, at 27)  But Penelope fails to identify any source of law requiring that a settlement with a Medicare beneficiary include any one of these mechanisms.  *See Berry v. Toyota Motor Sales, U.S.A., Inc.*, 2015 WL 158889, at *3 (W.D. La. Jan. 12, 2015) (noting that CMS offers no guidance to assess a liability settlement's consideration of future medical expenses and will not approve a proposed liability settlement).

Further, Penelope's suggested mechanisms contemplate partitioning part of a settlement to pay future medical expenses.  But parties are free to use the entire settlement to satisfy Medicare's interests.  *See Bruton v. Carnival Corp.*, 2012 WL 1627729, at *2–3 (S.D. Fla. May 2, 2012) (finding that a settlement satisfied Medicare's interests by requiring the beneficiary to pay future medical expenses from the settlement proceeds).  If, as part of a settlement, a beneficiary releases a primary payer from a claim for future medical expenses, the beneficiary must pay post-settlement medical expenses until exhausting the settlement.  42 C.F.R. § 411.24(g) (empowering Medicare to recover from a settlement recipient until exhausting the settlement); *Frank v. Gateway Ins. Co.*, 2012 WL 868872, at *4 (W.D. La. Mar. 13, 2012) (holding that a plaintiff-beneficiary who receives a settlement becomes a primary payer for future medical services until exhausting the settlement).  If a settlement remains silent on future medical expenses, the entire settlement is available to satisfy Medicare's interests.

Penelope argues that the lump-sum settlement fails to protect Medicare's interests because during the settlement negotiations the parties expected that

William's future medical expenses would exceed the settlement.  (Doc. 105 ¶ 111)

To the extent that Penelope invites the judicial imposition of a legal duty on primary payers to settle with a Medicare beneficiary for an amount that covers expected future medical expenses, that invitation is declined.  Although CMS prescribes in 42 C.F.R. § 411.46(b)(2) a standard for voiding a workers' compensation settlement that fails to cover expected medical expenses, no similar standard exists to escape a settlement in a personal injury action.  And, although a September 2011 CMS "policy memo" declares that all parties negotiating a personal injury settlement with a Medicare beneficiary have an amorphous duty to "protect Medicare's interests," no law (statutory, regulatory, or otherwise) imposes a substantive duty to settle a personal injury claim for an amount that covers future medical expenses.  *Sipler v. Trans Am Trucking*, 881 F. Supp. 2d 635, 638 (D.N.J. 2012).  Without a law from the legislative or executive branches, the policy favoring settlement of personal injury claims militates decisively against either creating a new standard to review a final settlement or imposing a new duty on a settling party.  *See Sipler* at 638–39 (citing *Mcdermott, Inc. v. AmClyde*, 511 U.S. 202, 215 (1994)).

Under the current CMS regime, the Stillwells became primarily liable for future medical expenses after receiving the settlement, and the settlement enforced by the Indiana trial court released the insurers from "all claims . . . which have resulted or may develop in the future from [William's accident]." (Doc. 105-17, at 3).  Because the Stillwells, not the insurers, retain the primary responsibility to pay

- 12 -

William's future medical expenses until the Stillwells exhaust the settlement proceeds, the insurers had no ORM to report.

****

Because the insurers neither (1) failed to properly report a TPOC nor (2) had any ORM to report, each claim in the third amended complaint collapses. In Counts I and II, the complaint fails to show that the defendants knowingly caused healthcare providers to present false claims because the claims were true. Counts III and IV fail for the same reason. *United States v. Space Coast Med. Assocs., L.L.P.*, 94 F. Supp. 3d 1250, 1263 (M.D. Fla. 2015). And without a false claim or statement, the conspiracy claims in Counts V and VI also fail. *See United States ex rel. Chase v. LifePath Hospice, Inc.*, 2016 WL 5239863, at *9 (M.D. Fla. Sept. 26, 2016) (holding that, because the existence of a false claim is an element of conspiracy under the FCA, failure to plead the existence of a false claim necessitates dismissal of a conspiracy claim). Further, because the insurers reimbursed CMS for the conditional payments, no unpaid obligation exists, and Counts VII and VIII fail. Finally, because the insurers had no primary-payer responsibility after the settlement, Counts IX and X, which rest exclusively on post-settlement payments, also fail.

## II.   *The complaint fails to sufficiently allege causation.*

Even if the insurers failed to report a primary-payer responsibility, Penelope must sustain her FCA claims in Counts I through VIII by further pleading with particularity that the insurers caused William's healthcare providers to submit false claims to Medicare. *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d

1301, 1311 (11th Cir. 2002). The insurers argue that, because Penelope cannot sufficiently plead that the insurers caused the submission of false claims or statements, Counts I through VIII warrant dismissal.

Penelope responds that the insurers caused William's healthcare providers to submit false claims and make false statements because the submission of a claim to Medicare, not the insurers, was a foreseeable result of the insurers' failure to report a primary-payer responsibility. (Doc. 120 at 16) But, to sustain an FCA claim on the theory that a defendant causes a third party to present a false claim or to make a false statement, a plaintiff must plead both (1) that the defendant's conduct was a substantial factor inducing the claim's or the statement's submission and (2) that the submission was reasonably foreseeable. *Ruckh v. Salus Rehab., LLC*, 963 F.3d 1089, 1107 (11th Cir. 2020).

Penelope cites four decisions to illustrate how a defendant who causes a third party to submit to CMS a false claim or statement becomes liable under the FCA. (Doc. 120 at 19–21) In one of the decisions, *United States ex rel. Sharp v. E. Okla. Orthopedic Ctr.*, 2009 WL 499375 (N.D. Okla. Feb. 27, 2009), the defendant submitted false claims to CMS directly, without involvement by a third party. Each of the other three decisions emphasizes that, if a defendant does not submit a claim or statement to CMS directly, the defendant only becomes liable under the FCA by directing or inducing a third party to submit a false claim or statement. *United States ex rel. Drescher v. Highmark, Inc.*, 305 F. Supp. 2d 451, 460 (E.D. Pa. 2004) (denying the defendant's motion to dismiss to determine the extent to which the defendant

directs healthcare providers to submit denied claims to Medicare); *United States ex rel. St. Joseph's Hosp., Inc. v. United Distributors, Inc.*, 2015 WL 8207477, at *7 (S.D. Ga. Dec. 7, 2015) (denying an insurer's motion for summary judgment after the insurer told healthcare providers to submit claims to Medicare); *Negron v. Progressive Cas. Ins. Co.*, 2016 WL 796888, at *6 (D.N.J. Mar. 1, 2016) (denying the insurer's motion to dismiss after the insurer told healthcare providers to submit claims to Medicare).

Penelope identifies no conduct by the insurers directing or inducing a healthcare provider to file a false claim with Medicare or to convey, either implicitly or explicitly, that Medicare was the primary payer on a claim.  Although failing to report a primary-payer responsibility might result in a false claim or statement by a third party, Penelope fails to allege a claim based on the insurers' causing a provider to file a false claim or statement, and she cannot sustain the FCA claims.

### III.   *The complaint fails to sufficiently allege a conspiracy.*

Additionally, the insurers argue that the complaint fails to allege with sufficient particularity the conspiracy asserted in Count V and VI.  (Docs. 109 at 21–22; 110 at 21–22)  Because Rule 9(b), Federal Rules of Civil Procedure, governs allegations of conspiracy, Penelope must allege "specific facts that show an agreement to violate the False Claims Act." *United States v. HPC Healthcare, Inc.*, 723 Fed. App'x 783, 791 (11th Cir. 2018).

The third amended complaint alleges only that each insurer conspired with the other to cause healthcare providers to submit false claims or statements to Medicare. (Doc. 105 ¶¶ 164, 169)  Neither the third amended complaint nor any other paper

supports this assertion with factual allegations about the substance or circumstances of the agreement.  Because these unsupported assertions fail under Rule 9, Counts V and VI warrant dismissal.  *HPC Healthcare, Inc.*, 723 Fed. App'x at 791.

### IV. The complaint is not a shotgun pleading.

Finally, Motorists Mutual argues that the third amended complaint, like the first amended complaint, is a shotgun pleading in violation of Rule 8, Federal Rules of Civil Procedure, because each count adopts the same span of over a hundred paragraphs of factual allegations and the factual paragraphs make undifferentiated allegations against both defendants.  (Doc. 110 at 13–14)

In response, Penelope notes that the counts against State Farm re-allege factual paragraphs similar, but not identical, to the paragraphs re-alleged in the counts against Motorists Mutual.  (Doc. 120 at 9)  Further, Penelope argues that the presence of occasional surplusage and imprecision cannot transform an otherwise sufficient complaint into a shotgun pleading and that the third amended complaint separates each claim against each insurer into discrete counts.  (Doc. 120 at 9)

Penelope's argument prevails.  Although each count realleges a nearly identical range of facts, the counts do not incorporate every preceding paragraph such that the last count is "a combination of the entire complaint." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015).  Because each claim rests on each insurer's failure to report a primary-payer responsibility, the factual allegations necessarily overlap.  Further, the re-allegation of some unnecessary facts in counts IX and X does not deprive the insurers of the necessary notice of the claims

against them.  *Weiland*, 792 F.3d at 1323 (noting that the unifying characteristic of a shotgun pleading is the failure to adequately notify a defendant of a claim or of the grounds upon which a claim rests).  Finally, although the complaint again alleges facts against both Motorists Mutual and State Farm, the complaint limits each count to one claim against one insurer, and the allegations are sufficiently specific to notify each defendant of the basis of Penelope's claims.

## CONCLUSION

For the reasons discussed above, the defendants' motions (Docs. 109, 110) are **GRANTED**.  Because further leave to amend is futile, this action is **DISMISSED WITH PREJUDICE** for failing to state a claim.  The clerk is directed to enter final judgment and to close the case.

ORDERED in Tampa, Florida, on September 27, 2021.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE